UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH R. CLAYTON, | No.  2:13-cv-00907-JAM-EFB |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF AND COUNTER DEFENDANT'S MOTION TO DISMISS AND MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** |
| AUTOMATED GAMING TECHNOLOGIES, INC., a Nevada corporation, and DOE 1 through DOE 50, inclusive | |
| Defendants. | |

AUTOMATED GAMING TECHNOLOGIES, INC., a Nevada corporation,

        Counter-Claimant,

    v.

KEITH R. CLAYTON, and DOES 1 through 10, inclusive,

        Counter-Defendants.

    This matter is before the Court on Plaintiff and Counter-Defendant Keith R. Clayton's ("Plaintiff") Motion to Dismiss

1    (Doc. #37) Defendant and Counter-Claimant Automated Gaming

2    Technologies, Inc.'s ("AGT") Counterclaim (Doc. #34) and

3    Plaintiff's Motion for Leave to File Third Amended Complaint

4    (Doc. #41).[1]   AGT filed oppositions to both motions (Doc. ##46-

5    47).   Plaintiff replied to both motions (Doc. ##49, 52) and they

6    are considered together here.

7

8        I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

9        The Counterclaim states four causes of action against

10   Plaintiff: (1) breach of contract, (2) breach of duty of loyalty,

11   (3) negligence, and (4) negligent interference with economic

12   relations.   Answer & Counterclaim ("CC") at pp. 13-16.

13       AGT is a Nevada corporation that develops and sells software

14   and hardware for the cash processing industries.   CC ¶ 70.   In

15   September 2009, AGT hired Plaintiff as the Executive Vice

16   President of its Systems Department.   CC ¶ 71; MTD at p. 1.   AGT

17   and Plaintiff executed a written employment agreement ("the

18   Employment Agreement").   CC, Exh. A.   Plaintiff was responsible

19   for creating and developing software for AGT's cash processing

20   machines, as well as supporting all activities relating to the

21   development, distribution and support of products sold or

22   supported by AGT.   CC ¶¶ 71, 73-74 & Exh. A.

23       During his employment, Plaintiff developed software to

24   provide a web-based application for AGT's machines.   CC ¶ 75.

25   According to the counterclaim, the software did not function

26

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for October 23, 2013.

2

1    properly.  *Id.* ¶ 80.  AGT alleges that Plaintiff failed to make

2    sufficient effort to travel to AGT's offices in Nevada to test

3    the software and was employed with Intel at the same time he was

4    employed with AGT, both in violation of the Employment Agreement.

5    *Id.* ¶¶ 79, 83.  As a result, Plaintiff was unable to fix the

6    software issues, and ultimately it became unworkable, requiring

7    AGT to rebuild the software at its own expense.  *Id.* ¶¶ 80-81.

8         Plaintiff filed the First Amended Complaint (Doc. #1-A) on

9    March 29, 2013, alleging five causes of action arising from the

10   Employment Agreement and a separate Software Sale Contract.  AGT

11   removed the case to this Court and brought a Motion to Dismiss

12   for Lack of Personal Jurisdiction and/or Improper Venue or in the

13   alternative to Transfer Venue (Doc. #7) to the District of

14   Nevada.  Plaintiff filed an unopposed counter-motion for leave to

15   file the Second Amended Complaint (Doc. #18).  AGT's motion was

16   dismissed in its entirety (Doc. #29), and Plaintiff was given

17   leave to file the Second Amended Complaint (Doc. #30).  The

18   Second Amended Complaint was deemed filed by this Court as of

19   July 10, 2013 (Doc. #30); it added, in relevant part, allegations

20   of a subsequent version of the Employment agreement.  A Status

21   (Pre-trial Scheduling) Order (Doc. #33) was issued on July 25,

22   2013, stating that "[n]o further joinder of parties or amendments

23   to pleadings is permitted except with leave of court, good cause

24   having been shown."  On September 21, 2013, Plaintiff filed his

25   motion for leave to file Third Amended Complaint.

26   ///

27   ///

28   ///

3

1                          II.   OPINION

2          A.   Request for Judicial Notice

3      AGT requests the Court to judicially notice its application

4  and receipt of a Nevada Business License for each of the years

5  from 2009 through 2012.  Generally, the Court may not consider

6  material beyond the pleadings in ruling on a motion to dismiss

7  for failure to state a claim.  The exceptions are material

8  attached to, or relied on by, the complaint so long as

9  authenticity is not disputed, or matters of public record,

10 provided that they are not subject to reasonable dispute.  E.g.,

11 Sherman v. Stryker Corp., 2009 WL 2241664, at *2 (C.D. Cal.

12 2009) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th

13 Cir. 2001) and Fed. R. Evid. 201).

14     Although the Court may take notice of AGT's certified

15 business licenses, it does not find any of the documents

16 particularly relevant to resolution of the issues now before the

17 Court.  Accordingly, the Court denies AGT's request for judicial

18 notice.

19         B.   Legal Standard

20     A party may move to dismiss an action for failure to state a

21 claim upon which relief can be granted pursuant to Federal Rule

22 of Civil Procedure 12(b)(6).  To survive a motion to dismiss a

23 plaintiff must plead "enough facts to state a claim to relief

24 that is plausible on its face."  Bell Atlantic Corp. v. Twombly,

25 556 U.S. 662, 570 (2007).  In considering a motion to dismiss, a

26 district court must accept all the allegations in the complaint

27 as true and draw all reasonable inferences in favor of the

28 plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

1  overruled on other grounds by Davis v. Scherer, 468 U.S. 183

2  (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  "First, to be

3  entitled to the presumption of truth, allegations in a complaint

4  or counterclaim may not simply recite the elements of a cause of

5  action, but must sufficiently allege underlying facts to give

6  fair notice and enable the opposing party to defend itself

7  effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.

8  2011), cert. denied, 132 S. Ct. 2101, 182 L. Ed. 2d 882 (U.S.

9  2012).  "Second, the factual allegations that are taken as true

10  must plausibly suggest an entitlement to relief, such that it is

11  not unfair to require the opposing party to be subjected to the

12  expense of discovery and continued litigation."  Id.  Assertions

13  that are mere "legal conclusions" are therefore not entitled to

14  the presumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678

15  (2009) (citing Twombly, 550 U.S. at 555).  Dismissal is

16  appropriate when a plaintiff fails to state a claim supportable

17  by a cognizable legal theory.  Balistreri v. Pacifica Police

18  Department, 901 F.2d 696, 699 (9th Cir. 1990).

19      Upon granting a motion to dismiss for failure to state a

20  claim, a court has discretion to allow leave to amend the

21  complaint pursuant to Federal Rule of Civil Procedure 15(a).

22  "Dismissal with prejudice and without leave to amend is not

23  appropriate unless it is clear . . . that the complaint could not

24  be saved by amendment."  Eminence Capital, L.L.C. v. Aspeon,

25  Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

26      C.   Discussion

27      Plaintiff contends AGT's counterclaims should all be

28  governed under Nevada law.  According to the Employment

Agreement and the Counterclaim, the Employment Agreement is to be governed by and interpreted under Nevada state law.  CC ¶ 90 & Exh. A.  In its Opposition to the Motion to Dismiss, AGT agrees that its claim for breach of the Employment Agreement is governed by Nevada law, but argues that the choice of law issue should be deferred and that the Court should preserve all counterclaims that are viable under either California or Nevada law.  Opp. MTD at pp. 4-6.  AGT further argues its tort claims should be analyzed under California's governmental interest test. As discussed below, the Court finds AGT's argument unpersuasive.

            1.   <u>Breach of Contract</u>

AGT's first counterclaim is for breach of the Employment Agreement.  The Employment Agreement involved Plaintiff's agreement "to work exclusively and in good faith for AGT, using [Plaintiff's] best efforts."  AGT alleges Plaintiff breached the agreement by being employed with Intel while he was employed with AGT.  CC ¶ 87.  As a result of this other employment, AGT contends Plaintiff failed to use his best efforts in developing and creating functioning software for AGT, resulting in damages to AGT.  <u>Id.</u> ¶ 88.   The Counterclaim and the Employment Agreement explicitly state that the agreement is to be governed by and interpreted under Nevada law.

The Supreme Court of California has stated that California courts shall apply the principles set forth in section 187 of the Restatement Second of Conflict of Laws, reflecting the "strong policy favoring enforcement of [contractual choice-of-law] provisions."  <u>Nedlloyd Lines B.V. v. Superior Court</u>, 3

1  Cal.4th 459, 464-65 (1992).  The first test is to determine

2  "(1) whether the chosen state has a substantial relationship to

3  the parties or their transaction, or (2) whether there is any

4  other reasonable basis for the parties' choice of law."  Id. at

5  466.  If either is met, the provision should be enforced as long

6  as the chosen state's law is not "contrary to a *fundamental*

7  policy of California."  Id.

8       The Employment Agreement governed Plaintiff's employment

9  with a Nevada corporation and the alleged damages were suffered

10  in Nevada, clearly providing a substantial relationship to the

11  transaction.  Nothing in Nevada's law governing the relevant

12  employment relationship is contrary to a fundamental policy of

13  California and no argument has been made by AGT to that effect.

14  Therefore, the Court will apply Nevada law to the breach of

15  contract claim.

16       Nevada Revised Statutes § 78.138 codifies the business

17  judgment rule and provides in relevant part:

18       [A] director or officer is not individually liable to

19       the corporation . . . for any damages as a result of

20       any act or failure to act in his or her capacity as a

21       director or officer unless it is proven that:

22       (a)  The director's or officer's act or failure to act

23            constituted a breach of his or her fiduciary

24            duties as a director or officer; and

25       (b)  The breach of those duties involved intentional

26            misconduct, fraud or a knowing violation of law.

27  N.R.S. § 78.138(7); see also Rapaport v. Soffer, 2:10-CV-935-

28  MMD-RJJ, 2012 WL 2522069, at *5 (D. Nev. 2012).

1    Plaintiff argues that AGT has failed to state facts
2  sufficient to state a claim for breach of contract in light of
3  the requirements set forth in § 78.138.  In response, AGT argues
4  that Plaintiff was not an "officer" for purposes of the statute
5  and even if he could be so labeled, the conduct underlying the
6  claim was performed for Plaintiff's personal benefit and not "in
7  his [] capacity as a director or officer."  N.R.S. § 78.138(7).
8    The Employment Agreement specifies that Plaintiff was
9  employed as the Executive Vice President of AGT's Systems
10  Department.  It further provides that Plaintiff would be charged
11  with "supporting all activities related to the development,
12  distribution and support of products sold or supported by AGT."
13  Given the title and scope of responsibilities, the Court finds
14  the Employment Agreement adequately supports Plaintiff's
15  argument that he was an "officer" as understood by § 78.138.
16  AGT's reliance on its own corporate filings fails to support an
17  interpretation of Plaintiff's title that refutes its common
18  understanding.
19    Next, AGT argues that Plaintiff breached the Employment
20  Agreement by working for Intel.  It claims this conduct was for
21  Plaintiff's own benefit and therefore was not carried out in the
22  scope of his employment with AGT.  However, the basis for
23  damages in AGT's first cause of action is Plaintiff's failure to
24  adequately develop and test functioning software.  The claim is
25  based on Plaintiff's failure to adequately monitor or develop
26  the software.  This "failure to act" in his capacity of
27  Executive Vice President of Systems is clearly controlled by the
28  provisions of § 78.138.  Plaintiff may have been acting in his

1  own best interest when working with Intel, but his alleged

2  employment with Intel is not the basis, in and of itself, of any

3  damages alleged by AGT.  Rather the employment allegedly caused

4  Plaintiff's failure to adequately fix the software, which in

5  turn caused damage to AGT.

6      Therefore, the breach of contract claim is one against an

7  "officer" of AGT for damages caused by an "act or failure to act

8  in his [] capacity as a director or officer."  N.R.S.

9  § 78.138(7).  Such a claim requires that the employee's breach

10  "involve[] intentional misconduct, fraud or a knowing violation

11  of law."  Id.  AGT's counterclaim fails to allege such conduct,

12  and, therefore, fails to state facts sufficient to state a claim

13  for breach of contract.  Accordingly, Plaintiff's Motion to

14  Dismiss the first cause of action in the counterclaim is

15  granted.  As it is not clear to the Court that the claim could

16  not be saved by alleging facts sufficient to meet the

17  requirements of § 78.138, the motion is granted without

18  prejudice.  Eminence Capital, L.L.C., 316 F.3d at 1052.

19              2.   Breach of Duty of Loyalty

20      AGT's second cause of action alleges Plaintiff violated a

21  duty of loyalty owed to it by virtue of Plaintiff's employment

22  and the Employment Agreement.  CC ¶¶ 92, 95.  AGT claims

23  Plaintiff's unauthorized employment with Intel was contrary to

24  the best interests of AGT and that it suffered damages as a

25  result.  It further seeks punitive damages for the breach.

26      An implied duty of loyalty is recognized under both Nevada

27  and California law.  See White Cap Indus., Inc. v. Ruppert, 119

28  Nev. 126, 129 (2003); James v. Childtime Childcare, Inc., CIV. S-

9

06-2676 DFL DA, 2007 WL 1589543, at *3 (E.D. Cal. 2007)
("California law recognizes a duty of loyalty that is breached
when an employee takes action against an employer's best
interests").  The elements of a cause of action for a breach of
the duty of loyalty are:  "(1) the existence of a relationship
giving rise to a duty of loyalty; (2) one or more breaches of
that duty; and (3) damage proximately caused by that breach."
Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 410 (Cal. Ct. App.
2007).

     Both parties rely on a District Court of Nevada opinion,
Tousa Homes, Inc. v. Phillips, 363 F. Supp. 2d 1274, 1280 (D.
Nev. 2005) for their relative positions.  The Tousa Homes court
found "an employee generally owes his employer a duty of loyalty
respecting prospective business opportunity."  Id.  As Plaintiff
points out, the final clause, "respecting prospective business
opportunity," drastically limits the scope of the duty of
loyalty.  This Court has similarly found that the duty of loyalty
requires an agent "'to act loyally for the principal's benefit **in
all matters connected with the agency relationship**' (citations
omitted)."  Ikon Office Solutions, Inc. v. Rezente, CIV. 2:10-
1704 WBS, 2011 WL 1402882, at *2 (E.D. Cal. 2011) (emphasis
added).

     Plaintiff argues that AGT has failed to state a viable cause
of action for breach of the duty of loyalty because it has not
alleged that Plaintiff ever diverted business opportunities,
competed against AGT or helped a competitor, or that any
confidential information was ever divulged as a result of
Plaintiff's alleged employment with Intel.

10

1    The Tousa Homes court relied on the Nevada Supreme Court

2    opinion in White Cap, which in turn relied on the Restatement

3    (Second) of Agency.  363 F. Supp. 2d at 1280.  The Restatement

4    provides that "an agent is subject to a duty to his principal to

5    act solely for the benefit of the principal in all matters

6    connected with his agency."  Restatement (Second) of Agency

7    § 387.  Comment (a) to § 393 states that "an agent can properly

8    act freely on his own account in matters not within the field of

9    his agency and in matters in which his interests are not

10   antagonistic to those of the principal, except that he can not

11   properly thus use confidential information."  The Restatement

12   (Third) of Agency § 8.04 further provides that "an agent has a

13   duty to refrain from competing with the principal and from taking

14   action on behalf of or otherwise assisting the principal's

15   competitors."

16       In addition, the most recent version of the Restatement

17   (Third) of Employment Law similarly holds the duty of loyalty is

18   limited to matters related to the employment relationship and

19   that a breach occurs when an employee discloses confidential

20   information or competes against the employer.  Restatement

21   (Third) of Employment Law: Employee Duty of Loyalty § 8.01

22   (Tentative Draft No. 3, 2010).  Comment (a) to § 8.01 hones in on

23   the circumstances confronting the Court here:

24       The duty of loyalty . . . is separate and distinct

25       from the duty of performance "to act in accordance

26       with the express and implied terms of any contract"

27       with the employer . . . ; as well as a duty "to act

28       with the care, competence, and diligence normally

1              exercised by agents in similar circumstances

2              (citations omitted)."  These latter duties are

3              normally enforced by the employer through legitimate

4              workplace discipline or termination of employment.

5     <u>Id.</u>

6          The Court finds this reasoning persuasive.  AGT has failed

7    to provide support for a claim for breach of the duty of loyalty

8    by alleging nothing more than Plaintiff having a second job.

9    Whether Plaintiff's inability to adequately perform his job

10   duties in the minds of AGT's management might have been a

11   function of his employment with Intel does not implicate the duty

12   of loyalty.  <u>See</u> <u>Thomas Petroleum, LLC v. Lloyd</u>, 1:11-CV-00902-

13   LJO, 2012 WL 4511369, at *6 (E.D. Cal. 2012) ("duty of loyalty

14   does not preclude an employee from engaging in all outside

15   business pursuits").  Under the facts as alleged by AGT, the

16   "inadequate performance [was] simply an incident of trying to

17   work two jobs."  <u>Food Lion, Inc. v. Capital Cities/ABC, Inc.</u>, 194

18   F.3d 505, 516 (4th Cir. 1999).

19        Therefore, the Court finds AGT has failed to state a cause

20   of action for breach of the duty of loyalty in Count Two of the

21   counterclaim.  Accordingly, Plaintiff's motion to dismiss that

22   claim is granted.  Again, it is not clear to the Court that AGT

23   could not amend the Counterclaim to state a cause of action for

24   breach of the duty of loyalty.  Thus, the claim is dismissed

25   without prejudice.

26        As a result, Plaintiff's arguments regarding AGT's claim for

27   punitive damages in connection with this cause of action are

28   moot.

                                  12

1          3.   Negligence

2          In its third cause of action, AGT seeks to hold Plaintiff

3     liable for negligence in the performance of his duties.   AGT

4     claims that as a result of this negligence, it was "forced to

5     rebuild and replace the software developed by [Plaintiff] at its

6     sole expense."  CC ¶ 104.  Plaintiff argues the negligence claim

7     as pleaded is barred by the economic loss rule, as well as the

8     provisions of N.R.S. § 78.138.  MTD at p. 13.

9          Section 78.138 is quite broad in scope.   It provides that an

10    officer is not individually liable to the corporation for *any*

11    damages as a result of any failure to act in his or her capacity

12    as an officer, unless a breach of a fiduciary duty involved

13    intentional misconduct, fraud or a knowing violation of law.

14    § 78.138(7).  Additionally, both California and Nevada follow the

15    economic loss doctrine.   The Nevada Supreme Court has stated that

16    the doctrine "bars unintentional tort actions when the plaintiff

17    seeks to recover 'purely economic losses.'"   Terracon Consultants

18    Western, Inc. v. Mandalay Resort Group, 125 Nev. 66, 72-73

19    (2009).   This Court has similarly held that "purely economic

20    losses are not recoverable in tort" unless there is a legal duty

21    imposed independent of a contract.   NuCal Foods, Inc. v. Quality

22    Egg LLC, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013).

23         The Ninth Circuit discussed the operation of the economic

24    loss doctrine at some length in Giles v. General Motors

25    Acceptance Corp., 494 F.3d 865, 872-79 (9th Cir. 2007).  It found

26    that based on Nevada case law and consistent with the law of

27    other jurisdictions, the economic loss doctrine has been deployed

28    to bar recovery in tort for purely monetary harm in negligence

13

1    cases unrelated to product liability.  Id. at 879.  However, it

2    found that Nevada "does not bar recovery in tort where the

3    defendant had a duty imposed by law **rather than by contract** and

4    where the defendant's **intentional** breach of that duty caused

5    purely monetary harm to the plaintiff."  Id.  AGT's claim does

6    not allege intentional conduct on the part of Plaintiff and the

7    duty arose from the parties' contractual employment relationship.

8         AGT argues in its Opposition that the doctrine does not

9    apply because it has "suffered damage to other property—namely

10   its cash processing machines."  Opp. MTD at p. 12.  It also

11   alleges that it suffered damage to its reputation and business as

12   a result of the negligence.  As Plaintiff points out, the

13   counterclaim itself does not allege any property damage or any

14   other non-economic damages.[2]  Therefore, the economic loss

15   doctrine applies to the claim regardless of whether the Court is

16   applying Nevada or California law.  Accordingly, the Court

17   dismisses the negligence claim without prejudice.

18              4.   Negligent Interference with Economic Relations

19        In its fourth cause of action, AGT makes a claim for

20   negligent interference with economic relations.  It alleges that

21   as a result of Plaintiff's breach of contract, negligence, and

22   breach of fiduciary duty, AGT's relationships with third parties

23   were disrupted, causing economic damages.  CC ¶¶ 110-111.

24   ///

25

26   [2] Because only economic damages were alleged, the Court need not
     address AGT's claim in its Opposition that the failure of the
27   software to achieve its intended result somehow resulted in
     "property damage" as that phrase is understood in the relevant
28   case law.  Opp. at p. 12.

                              14

1       Similar to the claims above, § 78.138 does not permit such a
2  claim to be brought against Plaintiff, a former officer of AGT,
3  as alleged.   In addition, Nevada law does not recognize a
4  *negligent* interference with economic relations cause of action.
5  Terracon Consultants, 125 Nev. at 73-74 (tortious interference
6  with contractual relations cognizable only when intentional,
7  rejecting the minority view permitting recovery for negligent
8  interference).   The Court finds that applying Nevada law to a
9  claim involving damage to a Nevada corporation incurred in Nevada
10  under an employment contract expressly providing that Nevada law
11  would govern is proper and would not be "contrary to a
12  *fundamental* policy of California." Nedlloyd, 3 Cal.4th at 464-
13  66.

14       Accordingly, the Court grants Plaintiff's motion to dismiss
15  the fourth cause of action.   It is dismissed with prejudice as it
16  appears clear to the Court that there is no set of facts that
17  could be alleged to state such a claim under Nevada law.

18       D.   Motion to Amend

19       Plaintiff has filed a motion for leave to file a Third
20  Amended Complaint.   Plaintiff seeks to add copyright
21  infringement and promissory fraud claims against existing
22  defendant, AGT, as well as against two newly named defendants,
23  AGT officers John Prather and Robert Magnanti (collectively
24  "Defendant Officers").   Motion to Amend at p. 1.

25       Under Federal Rule of Civil Procedure 15(a)(2), a party may
26  amend its pleading only with the opposing party's written
27  consent or the court's leave.   Fed. R. Civ. P. 15(a)(2).   Rule
28  15(a)(2) prescribes that "[t]he court should freely give leave

1  when justice so requires."  <u>Id.</u>  "This [leave] policy is 'to be

2  applied with extreme liberality.'"  <u>Eminence Capital, LLC v.</u>

3  <u>Aspeon, Inc.</u>, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal

4  citations omitted).  "Four factors are commonly used to

5  determine the propriety of a motion for leave to amend.  These

6  are: bad faith, undue delay, prejudice to the opposing party,

7  and futility of amendment."  <u>DCD Programs, Ltd. v. Leighton</u>, 833

8  F.2d 183, 186 (9th Cir. 1987) (citing <u>United States v. Webb</u>, 655

9  F.2d 977, 979 (9th Cir. 1981)).

10      However, a pre-trial scheduling order (Doc. #33) has been

11  issued in this case.  Pursuant to Federal Rule of Civil

12  Procedure 16(b)(4), good cause is required to file an amended

13  pleading after a pre-trial scheduling order has been issued.

14  <u>See</u> <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F. 2d 604, 608

15  (9th Cir. 1992).  The Ninth Circuit has held:

16      Unlike Rule 15(a)'s liberal amendment policy which

17      focuses on the bad faith of the party seeking to

18      interpose an amendment and the prejudice to the

19      opposing party, Rule 16(b)'s "good cause" standard

20      primarily considers the diligence of the party seeking

21      the amendment.  The district court may modify the

22      pretrial schedule "if it cannot reasonably be met

23      despite the diligence of the party seeking the

24      extension."  Fed.R.Civ.P. 16 advisory committee's

25      notes (additional citations omitted).

26  <u>Id.</u> at 609.

27      Plaintiff contends he did not have the factual basis to

28  state the claim of promissory fraud against AGT or the Defendant

16

1 Officers until AGT filed the declaration of Prather, indicating

2 AGT and its officers were denying the existence of the amended

3 Employment Agreement and an agreement to pay for the software

4 developed by Plaintiff.  Motion for Leave at pp. 4-5.  In

5 addition, Plaintiff argues that it first filed an application

6 for registration of the Software with the United States

7 Copyright Office on July 20, 2013.  Id. at pp. 6-7.  It argues

8 such a claim could not have been brought any earlier.

9      AGT argues that Plaintiff has not shown good cause

10 sufficient to modify the Status Order and that all facts upon

11 which these new claims are based were known to Plaintiff in

12 advance of filing the Second Amended Complaint.  AGT further

13 contends that it will be prejudiced by the delay.

14      The Court finds good cause has been shown to grant

15 Plaintiff leave to file the Third Amended Complaint.  The new

16 claims are clearly intertwined with those already present in

17 this action and the Defendant Officers have already been

18 involved in the dispute as officers of AGT.  There is no

19 indication that Plaintiff has not been diligent in bringing

20 these new claims in a timely fashion or that bad faith is

21 involved.  This matter is still in its relatively early stages,

22 and is not set for trial until October 6, 2004. The Court does

23 not find granting Plaintiff's motion will unduly prejudice AGT

24 or Defendant Officers.  Accordingly, the Court grants

25 Plaintiff's Motion for Leave to File Third Amended Complaint.

26      At AGT's request, the Court hereby permits the parties to

27 file an amended joint status report suggesting modifications to

28 the deadlines currently imposed by the Status Order of July 25,

2013. This amended joint status report shall be filed within sixty (60) days of the date of this Order.

### III.   ORDER

For the reasons set forth above, the Court GRANTS WITHOUT PREJUDICE Plaintiff's Motion to Dismiss the First, Second and Third Causes of Action in the Counterclaim.  The Court GRANTS WITH PREJUDICE Plaintiff's Motion to Dismiss the Fourth Cause of Action.

Plaintiff's Motion for Leave to File Third Amended Complaint is GRANTED.  The Third Amended Complaint, attached to Plaintiff's motion, is deemed filed as of the date of this Order.

AGT shall file its responsive pleading to the Third Amended Complaint within thirty (30) days from the date of this Order. If AGT files an amended Counterclaim as part of its responsive pleading, Plaintiff's response to the amended Counterclaim shall be filed within thirty (30) days thereafter.

IT IS SO ORDERED.

Dated: November 27, 2013

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE