1　GILBERT J. PREMO (Bar No. 48503)
　　Attorney at Law
2　500 Northfield Lane
　　Lincoln, CA  95648-8321
3　Telephone:　　(415) 974-6664
　　Facsimile:　　(415) 762-5350
4　gilbertpremo@gmail.com

5　Attorney for Plaintiff and Counter-Defendant
　　KEITH R. CLAYTON
6

7　DONAHUE  DAVIES LLP
　　JAMES R. DONAHUE  (Bar No. 105106)
8　REBEKAH MORRISSEY (Bar No. 287379)
　　P.O. Box 277010
9　Sacramento CA 95827
　　Telephone:　　(209) 817 2900
10　Facsimile: (916) 817-2644
　　JDonahue@donahuedavies.com
11　RMorrissey@donahuedavies.com

12　Attorneys for Defendant and Counter-Claimant
　　AUTOMATED GAMING TECHNOLOGIES, INC.
13　and Defendants John Prather and Robert Magnanti

14　　　　　　　　　　UNITED STATES DISTRICT COURT

15　　　　　　　　　　EASTERN DISTRICT OF CALIFORNIA

16

17　KEITH R. CLAYTON,　　　　　　　|　Case No.  2:13-cv-00907-JAM-EFB

18　　　　　　　　Plaintiff,　　　　　　|　**ORDER  OF DISMISSAL PURSUANT TO**
　　　　　　　　　　　　　　　　　　　　　|　**SETTLEMENT AGREEMENT**
19　　　　　v.

20　AUTOMATED GAMING
　　TECHNOLOGIES, INC., a Nevada
21　corporation, et al.

22　　　　　　　　Defendants.

23　_____

24　AND RELATED COUNTERCLAIM

25

26　　　　　The parties hereto, to wit plaintiff and counter-defendant Keith R. Clayton (plaintiff or

27　"Clayton"), and  defendant and counterclaimant Automated Gaming Technologies, Inc. ("AGT")

28　and defendants John Prather ("Prather") and Robert Magnanti ("Magnanti"), having entered into a

t

written  agreement for settlement of this action ("Settlement Agreement"),  a copy of which is attached hereto as "EXHIBIT 1" and incorporated as reference herein, and the parties having filed a Joint Application for entry of this accordant Order, IT IS HEREBY ORDERED AS FOLLOWS:

A.   The parties shall comply with the terms of the Settlement Agreement attached hereto as "EXHIBIT 1", which is hereby incorporated by reference as if fully set forth herein.  Without limitation:

1.   <u>Payment of $200,000</u>.  AGT shall pay to Clayton the sum of TWO HUNDRED THOUSAND DOLLARS ($200,000.00), which shall be paid to Clayton in installments as follows:

a.  AGT shall pay Clayton the sum of SEVEN THOUSAND FIVE HUNDRED DOLLARS  ($7,500.00) within thirty (30) days of the signing of this Agreement;

b.  AGT shall pay Clayton the additional sum of SEVEN THOUSAND FIVE HUNDRED DOLLARS  ($7,500.00) within sixty (60) days of the signing of this Agreement;

c.  AGT shall pay to Clayton the remaining balance of ONE HUNDRED EIGHTY-FIVE THOUSAND DOLLARS ($185,000.00) in installments of FIVE THOUSAND DOLLARS ($5,000) per month, for a period of thirty-seven (37) consecutive months, each installment being due on the first day of each calendar month hereafter, starting on the first day of the first calendar month that is over eighty (80) days from the signing of the Agreement, and continuing on the first day of each calendar month thereafter until the entire remaining unpaid balance of the originally agreed sum of $200,000.00 shall have been paid to Clayton;

provided, however, that if any such installment is not paid within ten (10) days of its due date, and said default continues for ten (10) days after written notice of such default is given to AGT, the entire remaining unpaid balance of the originally agreed sum of $200,000.00 shall become immediately due and payable by AGT to Clayton, without further demand or notice. Interest shall accrue at the legal rate on the unpaid balance of the principal sum or any installments only from the date that payment is due. In the event of any such default in payment which has continued for

[PROPOSED] ORDER OF DISMISSAL  PURSUANT TO SETTLE AGREEMENT

t

ten (10) or more days after such written notice of default, Clayton may apply to the Court in the Federal Court Action or the federal court in such district, by motion, or by ex-parte application, upon seven (7) days written notice to AGT and/or its then attorneys of record, if any, for entry of a order against AGT that it immediately pay to Clayton the entire remaining unpaid balance of the originally agreed sum of $200,000.00,.interest on past due balances, and reasonable attorney fees incurred in obtaining the said order. John Prather and Robert Magnanti are not hereby agreeing to make payments required of AGT hereunder as a personal liability of either Prather or Magnanti, but this is not intended and should not construed to in any way negate their fiduciary duties as corporate officers of AGT toward Clayton as a creditor of AGT.

2.　　Royalties on CBMS. AGT shall also pay to Clayton ten percent (10%) of all gross revenues from future sales or licensing by AGT of the Currency Banking Management System ("CBMS") software, or derivatives thereof (provided, however, that "derivatives" this shall not include the "Horizon" software), including:

a.　　New sales or licensing of CBMS to existing CBMS customers, if any;

b.　　New sales or licensing of CBMS to new CBMS customers, if any;

c.　　Upgrades of or for new versions of the CBMS for which AGT charges the CBMS customer, if any; and

d.　　A sale or assignment, if any, of the CBMS program or any copyright therein. Gross revenues for the purposes of the above royalty calculation shall not include charges for annual software maintenance which do not include charges for providing new or upgraded versions of the CBMS.  If AGT bundles the charge for providing a new or upgraded version of the CBMS into an annual software maintenance charge, Clayton shall be entitled to his above-percentage of the gross revenue therefrom, as applied to that portion of the total charge that represents AGT's charge for providing the new or upgraded version.  AGT shall provide quarterly reports to Clayton of such sales or licensing, if any, for which Clayton is entitled to payment hereunder, and pay over Clayton's share within fifteen (15) days of the end of each quarter in which AGT receives revenues as to which Clayton is entitled to such share hereunder.  As used

t

herein, the "Horizon" software includes only a "Windows" based WPF (Windows Presentation Foundation) application. "Derivatives" of the CBMS include, among other things, any "web-based" application that is based upon the Administrative Application copyrighted by Clayton or which is based upon or utilizes any source code written by Clayton for the CBMS.

    3.    <u>Source Code of CBMS</u>. Clayton will deliver to AGT, within fifteen (15) days after Clayton receives the second installment payment of $7,500.00 required under paragraph "1" above (so that total payments at that point equal at least $15,000.00), a copy of the source code in his possession for that version of the CBMS software written by Clayton which was the last version he delivered to AGT, as well as the source code of the work-in-process version 3.0 of the CBMS.  All such  source code shall be delivered without any warranty, express or implied, whatsoever by Clayton, and in its "AS IS" condition.  Any warranty of merchantability and any warranty of fitness for a particular purpose is expressly disclaimed.

    4.    <u>Copyright in Administrative Application</u>.  Clayton shall retain all copyright and ownership rights in the "Administrative Application" software written by Clayton, including but not limited to the "KC Administrative Application" for which a copyright was issued on July 20, 2013. Clayton hereby grants to AGT a perpetual, non-exclusive, royalty-free, license, to use the Administrative Application in AGT's possession, without any additional charge, so long as AGT is not in default under this Agreement. Clayton shall not, for a period of two (2) years after the signing of this Agreement compete with AGT, by using the Admin App in a competing employee banking application.

    B.   The Court retains and reserves jurisdiction to enforce the Settlement Agreement and this accordant Order;

    C.   Subject to the provisions of paragraphs A and B above, this action, including plaintiff's complaint against AGT, Prather, and Magnanti, and AGT's counterclaim against plaintiff, is dismissed with prejudice, , each party  to bear its own attorney fees and costs heretofore incurred.

    //

[PROPOSED] ORDER OF DISMISSAL  PURSUANT TO SETTLE AGREEMENT

t

D.   The foregoing dismissals are voluntary, and shall not operate as an adjudication on the merits under Rule 41 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED:

Dated:  10/14/2015

__ /s/ John A. Mendez_____
JOHN A. MENDEZ
United States District Court Judge

[PROPOSED] ORDER OF DISMISSAL  PURSUANT TO SETTLE AGREEMENT

EXHIBIT 1
to Order

SETTLEMENT AGREEMENT


This SETTLEMENT AGREEMENT ("this Agreement"), dated for reference purposes October 2, 2015, is made and entered by and between the following parties ("Parties") hereto:

Keith R. Clayton ("Clayton"), on the one hand; and

Automated Gaming Technologies, Inc., a Nevada corporation, ("AGT"), John B. Prather ("Prather"), and Robert Magnanti ("Magnanti"), on the other hand;

with reference to the following facts (any description or summary in this preface of the written pleadings, filings, claims or defenses of any person is for purposes of reference, and is not intended to supersede the actual text thereof):

A.      On March 28, 2013, Clayton filed a complaint in the Superior Court of the State of California, in and for the County of Placer, entitled *Keith R. Clayton, Plaintiff*, vs. *Automated Gaming Technologies, Inc., a Nevada corporation, and DOE 1 through DOE 50, inclusive, Defendants*, Case No. SCV0032766 ("the State Court Action"), and on March 29, 2013 filed a similarly entitled First Amended Complaint therein;

B.      On May 8, 2013, AGT removed the State Court Action to the United States District Court in and for the Eastern District of California, Sacramento Division, and it there became Case No. 2:13-CV-00907-JAM-EFB (the "Federal Court Action").  On November 27, 2013, Clayton filed his "Third Amended Complaint" therein against AGT, Prather and Magnanti, entitled *Keith R. Clayton, Plaintiff*, vs. *Automated Gaming Technologies, Inc., a Nevada corporation, John R. Prather [sic] and Robert Magnanti, Defendants*.  The reference to "John B. Prather" was in error, and the intended reference was to Prather.  On May 8, 2014, AGT filed its "Second Amended Counterclaims" therein against Clayton, entitled *Automated Gaming Technologies, Inc., a Nevada Corporation, Counter-Claimant, v. Keith R. Clayton, and Does 1 Through 10, Inclusive, Counter-Defendants*.  Said Third Amended Complaint and said Second Amended Counterclaims are the currently operative affirmative pleadings in the Federal Count Action. Each Party filed answers to said complaints or counterclaims, denying the material allegations therein and alleging various affirmative defenses.

C.      On September 17,  2015, a mediation was held between the parties to resolve the foregoing disputes, and a handwritten settlement agreement was then entered into between and signed by the Parties, which contemplated a formal settlement agreement embodying the terms thereof.  This Agreement is that formal settlement agreement, and supersedes and completely replaces the handwritten settlement agreement.

NOW THEREFORE, IN CONSIDERATION OF THE PREMISES AND THE MUTUAL COVENANTS AND CONDITIONS OF THIS AGREEMENT, IT IS HEREBY AGREED AS FOLLOWS:

1.      Payment of $200,000.   AGT shall pay to Clayton the sum of TWO HUNDRED THOUSAND DOLLARS ($200,000.00), which shall be paid to Clayton in installments as follows:

a.   AGT shall pay Clayton the sum of SEVEN THOUSAND FIVE HUNDRED DOLLARS  ($7,500.00) within thirty (30) days of the signing of this Agreement;

b.   AGT shall pay Clayton the additional sum of SEVEN THOUSAND FIVE HUNDRED DOLLARS  ($7,500.00) within sixty (60) days of the signing of this Agreement;

c.   AGT shall pay to Clayton the remaining balance of ONE HUNDRED EIGHTY-FIVE THOUSAND DOLLARS ($185,000.00) in installments of FIVE THOUSAND DOLLARS ($5,000) per month, for a period of thirty-seven (37) consecutive months, each installment being due on the first day of each calendar month hereafter, starting on the first day of the first calendar month that is over eighty (80) days from the signing of this Agreement, and continuing on the first day of each calendar month thereafter until the entire remaining unpaid balance of the originally agreed sum of $200,000.00 shall have been paid to Clayton;

provided, however, that if any such installment is not paid within ten (10) days of its due date, and said default continues for ten (10) days after written notice of such default is given to AGT, the entire remaining unpaid balance of the originally agreed sum of $200,000.00 shall become immediately due and payable by AGT to Clayton, without further demand or notice. Interest shall accrue at the legal rate on the unpaid balance of the principal sum or any installments only from the date that payment is due. In the event of any such default in payment which has continued for ten (10) or more days after such written notice of default, Clayton may apply to the Court in the Federal Court Action or the federal court in such district, by motion, or by ex-parte application, upon seven (7) days written notice to AGT and/or its then attorneys of record, if any, for entry of a order against AGT that it immediately pay to Clayton the entire remaining unpaid balance of the originally agreed sum of $200,000.00,.interest on past due balances, and reasonable attorney fees incurred in obtaining the said order.John Prather and Robert Magnanti are not hereby agreeing to make payments required of AGT hereunder as a personal liability of either Prather or Magnanti, but this is not intended and should not construed to in any way negate their fiduciary duties as corporate officers of AGT toward Clayton as a creditor of AGT.

2.      Royalties on CBMS. AGT shall also pay to Clayton ten percent (10%) of all gross revenues from future sales or licensing by AGT of the Currency Banking Management System ("CBMS") software, or derivatives thereof (provided, however, that "derivatives" this shall not include the "Horizon" software), including:

a.      New sales or licensing of CBMS to existing CBMS customers, if any;

b.      New sales or licensing of CBMS to new CBMS customers, if any;

c.      Upgrades of or for new versions of the CBMS for which AGT charges the CBMS customer, if any; and

d.      A sale or assignment, if any, of the CBMS program or any copyright therein.

Gross revenues for the purposes of the above royalty calculation shall not include charges for annual software maintenance which do not include charges for providing new or upgraded versions of the CBMS.  If AGT bundles the charge for providing a new or upgraded version of the CBMS into an annual software maintenance charge, Clayton shall be entitled to his above-percentage of the gross revenue therefrom, as applied to that portion of the total charge that represents AGT's charge for providing the new or upgraded version. AGT shall provide quarterly reports to Clayton of such sales or licensing, if any, for which Clayton is entitled to payment hereunder, and pay over Clayton's share

within fifteen (15) days of the end of each quarter in which AGT receives revenues as to which Clayton is entitled to such share hereunder.  As used herein, the "Horizon" software includes only a "Windows" based WPF (Windows Presentation Foundation) application. "Derivatives" of the CBMS include, among other things, any "web-based" application that is based upon the Administrative Application copyrighted by Clayton or which is based upon or utilizes any source code written by Clayton for the CBMS.

3.　　　Source Code of CBMS. Clayton will deliver to AGT, within fifteen (15) days after Clayton receives the second installment payment of $7,500.00 required under paragraph "1" above (so that total payments at that point equal at least $15,000.00), a copy of the source code in his possession for that version of the CBMS software written by Clayton which was the last version he delivered to AGT, as well as the source code of the work-in-process version 3.0 of the CBMS.  All such  source code shall be delivered without any warranty, express or implied, whatsoever by Clayton, and in its "AS IS" condition.  Any warranty of merchantability and any warranty of fitness for a particular purpose is expressly disclaimed.

4.　　　Copyright in Administrative Application.  Clayton shall retain all copyright and ownership rights in the "Administrative Application" software written by Clayton, including but not limited to the "KC Administrative Application" for which a copyright was issued on July 20, 2013. Clayton hereby grants to AGT a perpetual, non-exclusive, royalty-free, license, to use the Administrative Application in AGT's possession, without any additional charge, so long as AGT is not in default under this Agreement. Clayton shall not, for a period of two (2) years after the signing of this Agreement compete with AGT  , by using the Admin App in a competing employee banking application.

5.　　Notices to AGT. Any notices to AGT, Prather or Magnanti required under this Agreement, including but not limited to notices of defaults in payments, may be sent or delivered by email, facsimile transmission, United States mail, overnight courier, or personal delivery, to the following address(es) or facsimile numbers, or such other addresses or numbers as such parties may provide by prior written notice to Clayton:

If to Automated Gaming Technologies, Inc.:
Automated Gaming Technologies, Inc.
Attn: Robert Magnanti
6845 South Escondido St., Ste 104
Las Vegas, NV 89119
email: rmagnanti@agtworldwide.com
facsimile: (702) 685-9261

If to Magnanti:  Addressed to Magnanti at AGT's above address, facsimile number and/or  email;
If to Prather:  Addressed to Prather at AGT's above address or facsimile number, and/or Prather's email of  jprather@agtworldwide.com;

and, in each above case, with a copy to:

mailto:jdonahue@donahuedavies.comJames R. Donahue, Esq.
Donahue Davies LLP
Post Office Box 277010

Sacramento, CA 95827-7010, facsimile : (916) 817-2644. email: jdonahue@donahuedavies.com; [For courier or personal delivery: 1 Natoma St, Folsom, CA]

Notices sent by mail shall be effective three (3) calendar days after placing in the United States Mail. Notices sent by email or facsimile transmission by 5:00 p.m. on a weekday (other than a Court holiday) shall be deemed effective when sent, otherwise notices so sent after 5:00 p.m, or on Saturday, Sunday or Court holiday shall be deemed effective the next business day.  Notices sent by personal delivery shall be effective when received.

The source code above provided to be delivered to AGT shall be delivered to a 3rd Party repository which AGT will authorize.  AGT will provide the appropriate location to send the source code within 60 days after execution of this Agreement

6.      Payments and Notices to Clayton. Any payments to Clayton required under this Agreement, or reports required to be given under this Agreement shall be sent or delivered to:

        Gilbert J. Premo, Esq.
        500 Northfield Lane
        Lincoln, CA 95648-8321

and the payment instruments shall be payable to "Keith R. Clayton and Gilbert J. Premo".  Clayton may change the address and to whom the payments instruments shall be made payable by written notice to AGT. The due date for payments to Clayton above provided is the date they are due to be received by Clayton, not the date of mailing.  Any notices or reports required to be given to Clayton under this Agreement may be sent or delivered by email, facsimile transmission, United States mail, overnight courier, or personal delivery, to the following address(es) or facsimile numbers, or such other addresses as Clayton may provide by prior written notice to AGT, Prather and Magnanti:

        Gilbert J. Premo, Esq.
        500 Northfield Lane
        Lincoln, CA 95648-8321
        email: gilbertpremo@gmail.com
        facsimile: (415) 762-5350.

Notices sent by mail shall be effective three (3) calendar days after placing in the United States Mail. Notices sent by email or facsimile transmission by 5:00 p.m. on a weekday (other than a Court holiday) shall be deemed effective when sent, otherwise notices so sent after 5:00 p.m, or on Saturday, Sunday or Holiday shall be deemed effective the next business day.  Notices sent by personal delivery shall be effective when received

7.      Application for Court Order.  The Parties shall promptly upon execution of this Agreement submit to the Court in the Federal Court Action a joint application  requesting that the Court order the parties to comply with terms of this Agreement, and to reserve and retain jurisdiction to enforce the terms of this Agreement, and requesting that upon (but not before) the Court's entry of such Order, and subject to the Court's said reservation of jurisdiction to enforce the accordant Court Order , that the Federal Court Action be dismissed with prejudice.  The form of the Application,

including the accordant Court Order to be applied for as to be set forth as "Exhibit 2" to the Application, is attached hereto as "EXHIBIT A" and incorporated by reference herein, and a signed copy of the Agreement shall be attached as  "Exhibit 1" to both the Application, and to the proposed Order submitted to the Court, but to avoid unnecessary duplication this Agreement is not reproduced in "EXHIBIT A" . If the Court is unwilling to so order compliance with the terms of this Agreement and to reserve jurisdiction to enforce this Agreement, the parties shall meet and confer and attempt to arrive at a form of order which is acceptable to the Parties and the Court whereby Clayton may at the least summarily enforce the right to payment of the sum of $200,000.00 in the United States District Court for the Eastern District of California..

8.      <u>Personal Jurisdiction and Venue</u>.  Each party irrevocably agrees that any legal action or proceeding arising out of this Agreement or the transactions contemplated hereby shall be brought only in the United States District Court for the Eastern District of  California, or, if for any reason said court does not have jurisdiction of the action or proceeding, in the Superior Court of the State of California, in and for the County of Placer, California. Each party irrevocably waives any objection to the venue of said courts (whether on the basis of *forum non conveni*ens or otherwise) and accepts and submits to the jurisdiction of such courts in connection with any legal action or proceeding against it arising out of or concerning this Agreement.

9.      <u>Release by AGT Parties</u>. Automated Gaming Technologies, Inc., John B. Prather and Robert Magnanti, and each of them,  shall and do hereby fully and forever release and discharge:

> Keith R. Clayton, and each of his agents and employees (any and all of the foregoing being hereinafter referred to, individually and collectively, as "CLAYTON RELEASEES"), from:

any and all rights, claims, demands, debts, contracts, damages, actions or causes of action (any and all of the foregoing being hereinafter referred to, individually and collectively, as "CLAIMS") that the AGT RELEASORS may now have against the CLAYTON RELEASEES of whatever kind, character or description, including but not limited to any CLAIMS concerning, arising out of, or in any way whatsoever related to matters alleged the State Court Action or the Federal Court Action; PROVIDED, HOWEVER, that nothing in the foregoing the releases and discharges, or in  this Agreement, is intended to, and nothing herein shall be construed to, to release or discharge any CLAIMS that any such releasor has or may have under the terms of this Agreement, or any instrument, document or order executed, entered or delivered pursuant hereto, and any such CLAIMS are excepted from the foregoing releases and discharges.

10.     <u>Release by Clayton</u>.  , Keith R. Clayton shall and does hereby fully and forever release and discharge:

> Automated Gaming Technologies, Inc., John B. Prather, and Robert Magnanti, and each of its or his officers, employees, and agents (any and all of the foregoing being hereinafter referred to, individually and collectively, as "AGT RELEASEES"), from:

any and all rights, claims, demands, debts, contracts, damages, actions or causes of action (any and

all of the foregoing being hereinafter referred to, individually and collectively, as "CLAIMS") that Clayton may now have against the AGT RELEASEES of whatever kind, character or description, including but not limited to any CLAIMS concerning, arising out of, or in any way whatsoever related to the matters alleged in State Court Action or the Federal Court Action, PROVIDED, HOWEVER, that nothing in the foregoing the releases and discharges, or in this Agreement, is intended to, and nothing herein shall be construed to, to release or discharge any CLAIMS that Clayton has or may have under the terms of this Agreement, or any instrument, document or order executed, entered or delivered pursuant hereto, and any such CLAIMS are excepted from the foregoing releases and discharges.

11.     Waiver of CC §1542. Each party acknowledges that there is a risk that subsequent to the execution of this Agreement it or he will incur, suffer or discover injury, loss or damage, or any of these, which may be in some way caused by the matters which are the subject of this Agreement, but which are unknown and unanticipated at the time this Agreement is signed; and further there is a risk that any loss or damage presently known may be or may become more serious than the party may now expect or anticipate. Each releasor shall assume the above-mentioned risks and this Agreement and the releases herein shall apply to all unknown or unanticipated results of the matters which are the subject of this Agreement, as well as to those known and anticipated, and each party hereby waives all rights under California Civil Code, Section 1542, which states:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

and any similar rights under the laws of any other jurisdiction.

12.     Attorney Fees Incurred in Enforcement.  If any future legal action is brought to enforce this Agreement or any court order entered pursuant hereto, or recover damages for its alleged breach, the prevailing party in such action, insofar as it concerns this Agreement or such order, shall be entitled to recover from the other party its, his or her reasonable attorneys' fees and costs incurred therein, in addition to any compensatory or other damages that may be legally recoverable for the breach.

13.     No Admission. This Agreement, and the consideration hereby given and the releases herein provided, are solely the result of a compromise, and shall never at any time or for any reason be treated or considered in any context by any party, or any third person, as any admission of any liability, fault or responsibility whatsoever on the part of any party herein released, each of whom continues to wholly deny and disclaim any such liability, fault or responsibility.

14.     Integration.  This Agreement is and shall constitute the complete and exclusive agreement of the parties concerning its subject matter. This Agreement supersedes all other prior communications, oral or written, between the parties relating to these subject matters, and there are no agreements or representations concerning its subject matter which are not set forth herein. Each party acknowledges that it, he or she, independently or through counsel and advisors, has made such investigation of the underlying facts, rights, duties, and legal theories as it or he deems sufficient, and such party is not relying in the execution and/or approval of this Agreement upon any representation of any person released, or anyone acting on behalf of any person released, regarding

any matter, which is not set forth in writing herein.

15.     <u>Interpretation</u>.  The captions of this Agreement are for convenience and reference only, and shall not be deemed a part of this Agreement. As used herein, the masculine, feminine and neutral gender shall include the other, and the singular shall include the plural, whenever the context so requires. The term "person" includes both a natural person and any  legal entity or business organization. All parties and their counsel have been given the opportunity to review and comment on drafts of this Agreement, and this Agreement shall be deemed jointly drafted by the parties, and not construed for or against any party, but rather shall receive a reasonable construction. It shall be governed by and construed in accordance with the laws of the State of California.

16.     <u>Counterparts</u>. This Agreement may be executed in counterparts, and when all parties have duly signed and delivered this Agreement, shall constitute an agreement binding on all the parties notwithstanding that all the parties are not signatory to the same original or the same counterpart.  A faxed signature, or a signature scanned and sent by email, shall be effective as an original to make this Agreement binding.

17.     <u>Further Acts</u>.  Each party shall, on demand of the other, execute any document and perform any other act reasonably necessary to carry out the provisions and purposes of this Agreement.

18.     <u>Severance in Event of  Partial Invalidity</u>. If any provision of this Agreement is declared or held invalid or unenforceable by any Court of competent jurisdiction, that  invalidity or unenforceability shall not effect the validity and enforceability of the remainder of this Agreement, all of which shall remain binding and enforceable, subject to the exceptions stated in Paragraph is 7 above if the Court does not enter the Order requested by the Parties.

19.     <u>Parties, Successors, Warranty of Authority</u>.  This Agreement is binding on and shall inure to the benefit of the parties to it and their respective successors and assigns.  Any person signing this Agreement represents and warrants that he has the legal capacity and authority to execute this Agreement and bind the party on whose behalf he executes it.
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

20.    <u>No Third Party Beneficiaries</u>.   No person other than the parties to it and their respective successors and assigns shall have any rights under this Agreement.

IN WITNESS WHEREOF, the undersigned hereby execute this Agreement.

AUTOMATED GAMING TECHNOLOGIES, INC., a Nevada corporation

/s/ *Keith R. Clayton*_____
KEITH R. CLAYTON
Dated: October  3,  2015

By  /s/ *Robert Magnanti*_____
   Robert Magnanti, Its President and

APPROVED AS TO FORM:

By  /s/*John B. Prather*_____
   John B. Prather, its Executive Vice-President

/s/ *Gilbert J. Premo 10/5/15*_____
GILBERT J. PREMO
Attorney for Keith R. Clayton

Dated: October 2, 2015

DONAHUE DAVIES, LLP

/s/ *John B. Prather*_____
John B. Prather
Dated: October 2, 2015

By /s/*Rebekah Morrissey*_____
James R. Donahue/Rebekah Morrissey
Attorneys for Automated Gaming
Technologies, Inc., John B. Prather
and Robert Magnanti

/s/ *Robert Magnanti*_____
Robert Magnanti
Dated: October 2, 2015

GILBERT J. PREMO (Bar No. 48503)
Attorney at Law
500 Northfield Lane
Lincoln, CA  95648-8321
Telephone:      (415) 974-6664
Facsimile:      (415) 762-5350
gilbertpremo@gmail.com

Attorney for Plaintiff and Counter-Defendant
KEITH R. CLAYTON

DONAHUE DAVIES LLP
JAMES R. DONAHUE  (Bar No. 105106)
REBEKAH MORRISSEY (Bar No. 287379)
P.O. Box 277010
Sacramento CA 95827
Telephone:      (209) 817 2900
Facsimile: (916) 817-2644
JDonahue@donahuedavies.com
RMorrissey@donahuedavies.com

Attorneys for Defendant and Counter-Claimant
AUTOMATED GAMING TECHNOLOGIES, INC.
and Defendants John Prather and Robert Magnanti

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| KEITH R. CLAYTON,<br><br>                  Plaintiff,<br><br>          v.<br><br>AUTOMATED GAMING<br>TECHNOLOGIES, INC., a Nevada<br>corporation, et al.<br><br>                  Defendants.<br>_____<br>AND RELATED COUNTERCLAIM | Case No.  2:13-cv-00907-JAM-EFB<br><br>**JOINT APPLICATION FOR ORDER TO BE ENTERED PURSUANT TO SETTLEMENT AGREEMENT**<br>_____<br><br>**EXHIBIT A** |

The parties hereto, to wit plaintiff and counter-defendant Keith R. Clayton ("plaintiff" or Clayton"), and defendant and counterclaimant Automated Gaming Technologies, Inc. ("AGT") and defendants John Prather ("Prather") and Robert Magnanti ("Magnanti"), having entered into

an agreement for settlement of this action ("Settlement Agreement"), a copy of which is attached hereto as "EXHIBIT 1" and incorporated as reference herein, said parties hereby apply to the Court for entry of an Order, in the form of the Proposed Order attached hereto as "EXHIBIT 2", ordering the parties to comply with the Settlement Agreement, and reserving jurisdiction to enforce the Settlement Agreement, and, except as so provided for compliance with the Settlement Agreement and enforcement thereof, dismissing this action with prejudice..

One of the principal considerations for the settlement involves payments in a total of $200,000.00 to be made AGT to plaintiff in a period of over three (3) years, with no payments being made immediately. The Supreme Court in *Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) held that:

> ".. .[T]he parties' compliance with the terms of the settlement contract (or the court's "retention of jurisdiction" over the settlement contract) may, in the court's discretion, be one of the terms set forth in the [dismissal] order. .[T]he court is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree (511 U.S. at 381-382)."

The parties here have so agreed. If the parties' obligation to comply with the settlement agreement is part of the order of dismissal, jurisdiction to enforce the agreement exists. *Kokkonan*, at 380-381. The settlement agreement can then be summarily enforced in the manner agreed to by the parties. *See*, *Limbright* v. *Hofmeister*, 566 F.3d 672 (6th Cir. 2009) (defendant agreed to ex-parte proceeding in the event of default in payment.)

However, the retention of jurisdiction must be done very carefully . According to the case of *SmallBizPros, Inc*. v. *MacDonald*, 618 F.3d 458 (5th Cir. 2010), the parties *cannot* file a stipulation for dismissal if the Court's jurisdiction is to be preserved, unless the effectiveness of the filing is expressly conditioned upon a future act of the Court's (such as the court issuing an order retaining jurisdiction). Therefore, the parties are instead filing this joint application for a Court order whereby the Court is requested to order performance of the Settlement Agreement and retain jurisdiction to enforce the same, and said conditions are in any resultant order of dismissal. Any request for dismissal of this action is expressly conditioned upon the Court's

future action in entering the Order hereby applied for which orders performance of the Settlement Agreement and reserves jurisdiction to enforce the same,  and shall not otherwise be effective. This application is made pursuant to Rule 41 (a) (2) and (c) of the Federal Rules of Civil Procedure , but subject to the above condition.

The Court is respectfully requested by the parties to enter the accompanying Order.

Respectfully submitted.


Dated:  October.__, 2015       /s/ *Gilbert J. Premo*_____
                               GILBERT J. PREMO
                               Attorney for Plaintiff and Counter-Defendant
                               KEITH R. CLAYTON

Dated:  October __, 2015       DONAHUE **DAVIES LLP**


                               By /s/ *Rebekah Morrissey*_____
                               REBEKAH MORRISSEY
                               Attorneys for Defendant and Counter-Claimant
                               AUTOMATED GAMING TECHNOLOGIES, INC.
                               and Defendants John Prather and Robert Magnanti

JOINT APPLICATION FOR ORDER TO BE ENTERED PURSUANT TO SETTLE AGREEMENT

GILBERT J. PREMO (Bar No. 48503)
Attorney at Law
500 Northfield Lane
Lincoln, CA  95648-8321
Telephone:      (415) 974-6664
Facsimile:      (415) 762-5350
gilbertpremo@gmail.com

Attorney for Plaintiff and Counter-Defendant
KEITH R. CLAYTON

DONAHUE **DAVIES LLP**
JAMES R. DONAHUE  (Bar No. 105106)
REBEKAH MORRISSEY (Bar No. 287379)
P.O. Box 277010
Sacramento CA 95827
Telephone:      (209) 817 2900
Facsimile: (916) 817-2644
JDonahue@donahuedavies.com
RMorrissey@donahuedavies.com

Attorneys for Defendant and Counter-Claimant
AUTOMATED GAMING TECHNOLOGIES, INC.
and Defendants John Prather and Robert Magnanti

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH R. CLAYTON,<br><br>            Plaintiff,<br><br>      v.<br><br>AUTOMATED GAMING TECHNOLOGIES, INC., a Nevada corporation, et al.<br><br>            Defendants.<br>_____<br>AND RELATED COUNTERCLAIM | Case No.  2:13-cv-00907-JAM-EFB<br><br>**[PROPOSED] ORDER  OF DISMISSAL PURSUANT TO SETTLEMENT AGREEMENT**<br>_____<br><br><br>**EXHIBIT 2** |

        The parties hereto, to wit plaintiff and counter-defendant Keith R. Clayton (plaintiff or

"Clayton"), and  defendant and counterclaimant Automated Gaming Technologies, Inc. ("AGT")

and defendants John Prather ("Prather") and Robert Magnanti ("Magnanti"), having entered into a

t

written  agreement for settlement of this action ("Settlement Agreement"),  a copy of which is attached hereto as "EXHIBIT 1" and incorporated as reference herein, and the parties having filed a Joint Application for entry of this accordant Order, IT IS HEREBY ORDERED AS FOLLOWS:

A.    The parties shall comply with the terms of the Settlement Agreement attached hereto as "EXHIBIT 1", which is hereby incorporated by reference as if fully set forth herein.  Without limitation:

1.    <u>Payment of $200,000</u>.  AGT shall pay to Clayton the sum of TWO HUNDRED THOUSAND DOLLARS ($200,000.00), which shall be paid to Clayton in installments as follows:

a.  AGT shall pay Clayton the sum of SEVEN THOUSAND FIVE HUNDRED DOLLARS  ($7,500.00) within thirty (30) days of the signing of this Agreement;

b.  AGT shall pay Clayton the additional sum of SEVEN THOUSAND FIVE HUNDRED DOLLARS  ($7,500.00) within sixty (60) days of the signing of this Agreement;

c.  AGT shall pay to Clayton the remaining balance of ONE HUNDRED EIGHTY-FIVE THOUSAND DOLLARS ($185,000.00) in installments of FIVE THOUSAND DOLLARS ($5,000) per month, for a period of thirty-seven (37) consecutive months, each installment being due on the first day of each calendar month hereafter, starting on the first day of the first calendar month that is over eighty (80) days from the signing of the Agreement, and continuing on the first day of each calendar month thereafter until the entire remaining unpaid balance of the originally agreed sum of $200,000.00 shall have been paid to Clayton;

provided, however, that if any such installment is not paid within ten (10) days of its due date, and said default continues for ten (10) days after written notice of such default is given to AGT, the entire remaining unpaid balance of the originally agreed sum of $200,000.00 shall become immediately due and payable by AGT to Clayton, without further demand or notice. Interest shall accrue at the legal rate on the unpaid balance of the principal sum or any installments only from the date that payment is due. In the event of any such default in payment which has continued for

t

ten (10) or more days after such written notice of default, Clayton may apply to the Court in the Federal Court Action or the federal court in such district, by motion, or by ex-parte application, upon seven (7) days written notice to AGT and/or its then attorneys of record, if any, for entry of a order against AGT that it immediately pay to Clayton the entire remaining unpaid balance of the originally agreed sum of $200,000.00,.interest on past due balances, and reasonable attorney fees incurred in obtaining the said order. John Prather and Robert Magnanti are not hereby agreeing to make payments required of AGT hereunder as a personal liability of either Prather or Magnanti, but this is not intended and should not construed to in any way negate their fiduciary duties as corporate officers of AGT toward Clayton as a creditor of AGT.

2.      Royalties on CBMS. AGT shall also pay to Clayton ten percent (10%) of all gross revenues from future sales or licensing by AGT of the Currency Banking Management System ("CBMS") software, or derivatives thereof (provided, however, that "derivatives" this shall not include the "Horizon" software), including:

a.        New sales or licensing of CBMS to existing CBMS customers, if any;

b.        New sales or licensing of CBMS to new CBMS customers, if any;

c.        Upgrades of or for new versions of the CBMS for which AGT charges the CBMS customer, if any; and

d.        A sale or assignment, if any, of the CBMS program or any copyright therein. Gross revenues for the purposes of the above royalty calculation shall not include charges for annual software maintenance which do not include charges for providing new or upgraded versions of the CBMS.  If AGT bundles the charge for providing a new or upgraded version of the CBMS into an annual software maintenance charge, Clayton shall be entitled to his above-percentage of the gross revenue therefrom, as applied to that portion of the total charge that represents AGT's charge for providing the new or upgraded version.  AGT shall provide quarterly reports to Clayton of such sales or licensing, if any, for which Clayton is entitled to payment hereunder, and pay over Clayton's share within fifteen (15) days of the end of each quarter in which AGT receives revenues as to which Clayton is entitled to such share hereunder.  As used

t

herein, the "Horizon" software includes only a "Windows" based WPF (Windows Presentation Foundation) application. "Derivatives" of the CBMS include, among other things, any "web-based" application that is based upon the Administrative Application copyrighted by Clayton or which is based upon or utilizes any source code written by Clayton for the CBMS.

3.      Source Code of CBMS. Clayton will deliver to AGT, within fifteen (15) days after Clayton receives the second installment payment of $7,500.00 required under paragraph "1" above (so that total payments at that point equal at least $15,000.00), a copy of the source code in his possession for that version of the CBMS software written by Clayton which was the last version he delivered to AGT, as well as the source code of the work-in-process version 3.0 of the CBMS.  All such  source code shall be delivered without any warranty, express or implied, whatsoever by Clayton, and in its "AS IS" condition.  Any warranty of merchantability and any warranty of fitness for a particular purpose is expressly disclaimed.

4.      Copyright in Administrative Application.  Clayton shall retain all copyright and ownership rights in the "Administrative Application" software written by Clayton, including but not limited to the "KC Administrative Application" for which a copyright was issued on July 20, 2013. Clayton hereby grants to AGT a perpetual, non-exclusive, royalty-free, license, to use the Administrative Application in AGT's possession, without any additional charge, so long as AGT is not in default under this Agreement. Clayton shall not, for a period of two (2) years after the signing of this Agreement compete with AGT, by using the Admin App in a competing employee banking application.

B.   The Court retains and reserves jurisdiction to enforce the Settlement Agreement and this accordant Order;

C.   Subject to the provisions of paragraphs A and B above, this action, including plaintiff's complaint against AGT, Prather, and Magnanti, and AGT's counterclaim against plaintiff, is dismissed with prejudice, , each party  to bear its own attorney fees and costs heretofore incurred.

//

[PROPOSED] ORDER OF DISMISSAL  PURSUANT TO SETTLE AGREEMENT

t

1

2

        D.   The foregoing dismissals are voluntary, and shall not operate as an adjudication on

the merits under Rule 41 of the Federal Rules of Civil Procedure.

3

        IT IS SO ORDERED:

4

Dated:   _____, 2015

5

6                                                 _____

                                                  JOHN A. MENDEZ
7                                                 United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER OF DISMISSAL  PURSUANT TO SETTLE AGREEMENT